**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

**ALAN BREVALDO,**

        **Plaintiff,**

    **v.**                        **Civil Action 2:18-cv-446**
                                      **Judge James L. Graham**
                                      **Magistrate Judge Jolson**

**MUSKINGUM COUNTY SHERIFF'S**
**OFFICE, et al.,**

        **Defendants.**

## ORDER AND REPORT AND RECOMMENDATION

This matter is before the Court on the parties' Cross-Motions for Summary Judgment (Docs. 39, 43) and Defendants' Motion to Strike (Doc. 59). For the reasons that follow, the undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment (Doc. 39) be **GRANTED in part and DENIED in part** and that Plaintiff's Motion for Summary Judgment (Doc. 43) be **DENIED**. Specifically, the Undersigned **RECOMMENDS** that Plaintiff be permitted to proceed with his excessive force claims against:

- Defendants Martin and Smith for their alleged actions on January 13, 2018;

- Defendant Winters for his alleged actions on January 15, 2018; and

- Defendants Fuller, Lang, and Hartman for their alleged actions on January 16, 2018.

The Undersigned **RECOMMENDS** that summary judgment be entered in favor of Defendants on all remaining claims. Further, Defendants' Motion to Strike (Doc. 59) is **DENIED as moot**.

# I. BACKGROUND

Plaintiff is an inmate at the Southern Ohio Correctional Facility. (Doc. 64). Relevant here, in late 2017 through early 2018, he was incarcerated at the Muskingum County Jail (the "Jail"). Defendants are Muskingum County and nine employees of the Muskingum County Sheriff's Department: Captain Dave Suciu, Sergeant Lang, Sergeant Winters, Corrections Officer Martin, Corrections Officer Smith, Corrections Officer Hanning, Corrections Officer Hartman, Corrections Officer Fuller,[1] and Corrections Officer Patterson. (*See* Docs. 8, 18).

While incarcerated in the Jail, correctional staff engaged in at least five separate physical altercations with Plaintiff. (*See* Docs. 39-3–39-12 (affidavits of correctional staff describing those altercations); Doc. 43-1–43-2, 43-4–43-10, 43-12, 43-14 (narrative and case reports describing the same)). Further, Plaintiff alleges that correctional staff denied him medical care and access to legal materials and subjected him to unconstitutional conditions of confinement.

As a result, Plaintiff filed this lawsuit under 42 U.S.C. § 1983, bringing claims of excessive force, deliberate indifference to serious medical needs, denial of access to the courts, and unlawful conditions of confinement. (Docs. 8, 8-1). The Court subsequently granted Defendants' Motion to Dismiss but allowed Plaintiff the opportunity to file an amended complaint. (Doc. 20). Plaintiff did so (*see* Doc. 18), which incorporated the original Complaint (Doc. 8) and added additional allegations, claims, and defendants. After discovery, the parties filed competing Motions for

---

[1] It appears that two officers with the last name Fuller worked at the Jail during the relevant time period. Erin Fuller and Dale Fuller are both Sheriff's Deputies employed by the Muskingum County Sheriff's Office. (Doc. 39-5, ¶¶ 1–2; Doc. 39-12, ¶¶ 1–2). Defendants maintain that "Deputy Dale Fuller is not a party to these proceedings and no claim has been made against him." (Doc. 39 at 12 n.9; *see also id.* at 1 (moving for summary judgment on behalf of Erin Fuller); *id.* at 13 (referring to Plaintiff's failure to serve Erin Fuller)). But, in the Undersigned's view, the record is clear that Plaintiff is suing Deputy Dale Fuller, not Deputy Erin Fuller, for excessive force. (*See* Doc. 8-1 at 5 (alleging excessive force when "Deputy Fuller" used a taser on Plaintiff on January 16, 2018); Doc. 39-12, ¶¶ 15–16 (averring that Deputy Dale Fuller used a taser on Plaintiff on January 16, 2018); Doc. 41, 37:21–22 ("I know Fuller was there. He's the one that shot me with the Taser.")). The Undersigned considers Deputy Dale Fuller as a defendant here.

Summary Judgment (Docs. 39, 43) and Defendants' Motion to Strike (Doc. 59), all of which are fully briefed and ripe for resolution.

## II.     STANDARD OF REVIEW

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment bears the initial "responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record that demonstrate "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The burden then shifts to the nonmoving party to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists if a reasonable jury could return a verdict for the nonmoving party. *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (defining "genuine" as more than "some metaphysical doubt as to the material facts"). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251–52.

## III.     DISCUSSION

### A.     Muskingum County

Plaintiff purports to sue Defendant Muskingum County for violating his Eight Amendment rights. (Doc. 18 at 2). But "[a] municipality may not be held liable under § 1983 on a respondeat superior theory—in other words, solely because it employs a tortfeasor." *Jackson v. City of*

*Cleveland*, 925 F.3d 793, 828 (6th Cir. 2019) (citation and quotations omitted). "Instead, a plaintiff must show that through its deliberate conduct, the municipality was the moving force behind the injury alleged." *Id.* (citation and quotations omitted). "A plaintiff does this by showing that the municipality had a 'policy or custom' that caused the violation of his rights." *Id.* (quoting *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690 (1978)).

> There are four methods of showing the municipality had such a policy or custom: the plaintiff may prove (1) the existence of an illegal official policy or legislative enactment; (2) that an official with final decision making authority ratified illegal actions; (3) the existence of a policy of inadequate training or supervision; or (4) the existence of a custom of tolerance or acquiescence of federal rights violations.

*Jackson*, 925 F.3d at 828 (citation and internal quotations omitted).

Assuming for the sake of argument that Defendant Muskingum County is subject to suit under 42 U.S.C. § 1983, Plaintiff has failed to satisfy this standard. At various points in his briefs, Plaintiff asserts that Defendant Muskingum County lacked policies to ensure the proper training of correctional officers and that it had a custom of tolerance or acquiescence of federal rights violations. (*See, e.g.*, Doc. 43 at 5 ("This case is a failure of the system to adequately train officers …"); *id.* at 25 ("Muskingum County is liable due to custom of tolerance or quiescence of federal rights violations and lack of training. The plaintiff has demonstrated the violations of policies specifically use of restrain [sic] and seclusion and proper transferring of inmates … There is no documentation of any of the officers having any type of mental health training with the exceptions of signs of suicide."). Except for these conclusory assertions, Plaintiff cites no evidence demonstrating that Defendant Muskingum County's customs or policies were the moving force behind his alleged injuries, and the Undersigned has not been able to identify any through an independent review of the record. Absent such evidence, Defendant Muskingum County is entitled to summary judgment.

## B.     Defendant Suciu

Plaintiff's claims against Defendant Suciu fail for similar reasons.  "To prevail on a cause of action under § 1983, a plaintiff must prove (1) the deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law."  *Winkler v. Madison Cty.*, 893 F.3d 877, 890 (6th Cir. 2018) (citation and internal quotation marks omitted).  State actors may be sued in their official or individual capacity.  *Kentucky v. Graham*, 473 U.S. 159, 165–66 (1985).  The purpose of an individual capacity suit is "to impose personal liability upon a [state actor] for actions he takes under color of state law."  *Id.* at 165.  A plaintiff bringing an individual capacity suit "must plead that each [state actor] defendant, through the [person]'s own individual actions, has violated the Constitution."  *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009); *see also Heyerman v. Cty. of Calhoun*, 680 F.3d 642, 647 (6th Cir. 2012) (citations omitted) ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior.").  As a result, even if a plaintiff can prove a violation of his constitutional rights, his § 1983 claim must fail against a supervisory official unless the supervisor "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate."  *Top Flight Entm't, Ltd. v. Schuette*, 729 F.3d 623, 634–35 (6th Cir. 2013) (citation and internal quotation marks omitted).  Thus, "[a]llegations of *respondeat superior* do not sustain a § 1983 claim against state employees in their individual capacities."  *Colvin v. Caruso*, 605 F.3d 282, 292 (6th Cir. 2010).

Here, Plaintiff contends that Defendant Suciu violated his rights by directing correctional staff to "deny him telephone calls, mail, and legal materials."  (Doc. 43 at 23).  Defendant Suciu's actions purportedly interfered with Plaintiff's ability to represent himself in state court proceedings.  (*Id.*).  "Prison officials may not erect any barriers that impede an inmate's access to

the courts." *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996). "In order to state a claim for interference with access to the courts, however, a plaintiff must show actual injury." *Harbin-Bey v. Rutter*, 420 F.3d 571, 578 (6th Cir. 2005) (citing *Thaddeus–X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc)). "Examples of actual prejudice to pending or contemplated litigation include having a case dismissed, being unable to file a complaint, and missing a court-imposed deadline." *Harbin-Bey*, 420 F.3d at 578 (citing *Jackson v. Gill*, 92 F. App'x 171, 173 (6th Cir. 2004)).

Although Plaintiff does cite evidence showing that Defendant Suciu was personally involved in denying him telephone calls, mail, and legal materials, his denial of access to courts claim fails for a more fundamental reason: He presents no evidence, and makes no argument, that he suffered an actual injury as a result of Defendant Suciu's actions. Defendant Suciu is entitled to summary judgment on Plaintiff's denial of access to courts claim as a result. *See Harbin-Bey*, 420 F.3d at 578 (citing *Thaddeus–X*, 175 F.3d at 394).

Defendant Suciu is also entitled to summary judgment on any claims of excessive force. Plaintiff states that Defendant Suciu was "completely aware" of the other individual Defendants' use of excessive force against him based on multiple internal investigations and inmate complaints. But simple, after-the-fact knowledge of the alleged assaults is insufficient to show that Defendant Suciu "implicitly authorized, approved or knowingly acquiesced in the unconstitutional conduct of the offending subordinate," *Top Flight Entm't*, 729 F.3d at 634–35. As a result, Plaintiff's excessive force claim is an attempt to hold Defendant Suciu liable under a theory of *respondeat superior*, which the law does not permit. *See Colvin*, 605 F.3d at 292.

## C.    Deliberate Indifference

Liberally construed, Plaintiff's Amended Complaint appears to bring a claim against Defendants for deliberate indifference to serious medical needs. (*See* Doc. 8-1 at 1–4 (alleging he

was refused medical treatment after certain physical altercations with correctional staff); *id.* at 9 (asserting that he "was always refused medical treatment" and appearing to bring a claim for "refusal of providing adequate medical treatment"); Doc. 18 at 1 (requesting to amend his complaint to include a claim of "inadequate medical treatment")). His briefs with regards to the pending Motions for Summary Judgment contain similar assertions. (*See, e.g.*, Doc. 43 at 4–5 (claiming "inadequate medical treatment" and citing failure to provide necessary medication); *id.* at 26 ("The Plaintiff was refused medical treatment on most of the incidents when he was assaulted by the above listed corrections officers. The incident in which he was provided medical attention was by two Licensed Practical Nurse (LPN) who are not qualified to make medical assessments, diagnosis, or develop a treatment plan.")).

"[D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal citation and quotation marks omitted). An inmate can bring suit under 42 U.S.C. § 1983 for an Eighth Amendment violation "whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Id.* at 104–05.

"To establish a prison official's deliberate indifference to a serious medical need, an inmate must show two components, one objective and the other subjective." *Rhinehart v. Scutt*, 894 F.3d 721, 737 (6th Cir. 2018) (citing *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). "The objective component requires a plaintiff to prove that the alleged deprivation of medical care was serious enough to violate the Eighth Amendment." *Rhinehart*, 894 F.3d at 737 (citing *Farmer*, 511 U.S. at 834). A medical need is sufficiently serious if it "has been diagnosed by a physician as

mandating treatment or … is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Jones v. Muskegon County*, 625 F.3d 935, 941 (6th Cir. 2010) (quoting *Harrison v. Ash*, 539 F.3d 510, 518 (6th Cir. 2008)).

"The subjective component requires a showing that the 'official kn[ew] of and disregard[ed] an excessive risk to inmate health or safety.'" *Richmond v. Huq*, 885 F.3d 928, 939 (6th Cir. 2018) (quoting *Farmer*, 511 U.S. at 837). "This means that the defendants must have a 'sufficiently culpable state of mind.'" *Darrah v. Krisher*, 865 F.3d 361, 368 (6th Cir. 2017) (quoting *Farmer*, 511 U.S. at 837). This requires the Court to determine whether the official was "subjectively reckless, such that she was actually aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference." *Bays v. Montmorency Cty.*, 874 F.3d 264, 268 (6th Cir. 2017) (citation, quotation marks, and alterations omitted). "A plaintiff may rely on circumstantial evidence to prove subjective recklessness." *Rhinehart*, 894 F.3d at 738.

Here, Plaintiff generally asserts that he was denied access to medical care but cites no evidence of a single defendant denying him access to medical care or otherwise demonstrating deliberate indifference to a serious medical need. And despite her best efforts reviewing the exhibits submitted by Plaintiff, the Undersigned has not been able to identify any such evidence either. Because Plaintiff has not demonstrated that any individual defendant denied him access to medical care, his deliberate indifference claim fails as a matter of law. *See Heyerman*, 680 F.3d at 647 (citations omitted) ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior.").

### D.    Conditions of Confinement

In his Amended Complaint, Plaintiff appears to allege an unlawful conditions-of-confinement claim.  (Doc. 8-1 at 9 ("[I] had no contact with the outside world.  I was in a single-man cell for 23 hours a day.  was not allowed to have books writing utensils or paper.  was only allowed to write letters when I was let out for my 1 hour a day for a shower … I was not allowed to call my family or get visits.").[2]  The conditions Plaintiff complains of are examples of the "routine discomfort" prisoners experience while incarcerated.  *Hudson v. McMillian*, 503 U.S. 1, 9 (1992).  Because "extreme deprivations," rather than routine discomfort, "are required to make out a conditions-of-confinement claim," Plaintiff's claim cannot survive summary judgment here.  *Id.* (citation and quotations omitted).

Moreover, to establish a claim for damages under the Eighth Amendment, a plaintiff must demonstrate some type of physical injury.  *See Flanory v. Bonn*, 604 F.3d 249, 254 (6th Cir. 2010) ("[E]ven though the physical injury required by § 1997e(e) for a § 1983 claim need not be significant, it must be more than *de minimis* for an Eighth Amendment claim to go forward.").  And Plaintiff has not presented, and the Undersigned has not identified, evidence of a physical injury caused by his conditions of confinement at the Jail.

### E.    Excessive Force

"The Eighth Amendment prohibition on cruel and unusual punishment protects prisoners from the unnecessary and wanton infliction of pain."  *Rafferty v. Trumbull Cty., Ohio*, 915 F.3d 1087, 1093 (6th Cir. 2019) (quoting *Villegas v. Metro. Gov't of Nashville*, 709 F.3d 563, 568 (6th

---

[2] In his Motion for Summary Judgment, Plaintiff attempts to add a conditions-of-confinement claim based on alleged unsanitary conditions and being denied access to water.  (*See* Doc. 43 at 3, 8, 11).  But Plaintiff cannot use the summary judgment process to bring claims that were never raised in his Amended Complaint.  *Heru v. Ohio*, No. 2:17-CV-658, 2019 WL 4413041, at *2 (S.D. Ohio Sept. 16, 2019) (citing *Tucker v. Union on Needletrades, Indus. & Textile Emps.*, 407 F.3d 784, 788 (6th Cir. 2005); *Hubbard v. Select Portfolio Servicing, Inc.*, No. 16-CV-11455, 2017 WL 3725475, at *3 (E.D. Mich. Aug. 30, 2017), *aff'd*, 736 F. App'x 590 (6th Cir. 2018), *reh'g denied* (June 28, 2018)).  The Undersigned, therefore, addresses only those claims that were pled in the Amended Complaint.

Cir. 2013)). "To make out a claim under the Eighth Amendment, the prisoner must satisfy both an objective and a subjective component." *Rafferty*, 915 F.3d at 1094 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011)). "The objective component requires the pain inflicted to be sufficiently serious." *Rafferty*, 915 F.3d at 1094 (citation and quotations omitted). This inquiry is "contextual and responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle*, 429 U.S. at 104).

"The subjective component requires that the prison official act with a 'sufficiently culpable state of mind.'" *Rafferty*, 915 F.3d at 1094 (quoting *Farmer*, 511 U.S. at 834). In analyzing this component, courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. In determining "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm," courts consider a number of factors, including: (1) "the extent of injury suffered," (2) "the need for application of force," (3) "the relationship between that need and the amount of force used," (4) "the threat reasonably perceived by the responsible officials," and (5) "any efforts made to temper the severity of a forceful response." *Id.* (citation and quotations omitted).

The extent of a plaintiff's injury is relevant to analyzing an excessive force claim under the Eighth Amendment: It "is one factor that may suggest whether the use of force could plausibly have been thought necessary in a particular situation," and it "may also provide some indication of the amount of force applied." *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010).

> [N]ot every malevolent touch by a prison guard gives rise to a federal cause of action. The Eighth Amendment's prohibition of cruel and unusual punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind. An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim.

*Id.* 37–38 (internal citations and quotations omitted). But "[i]njury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts. An inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Id.* at 38. Indeed, contemporary standards of decency are always violated when prison officials maliciously and sadistically use force to cause harm. *Hudson*, 503 U.S. at 9.

Ultimately, whether a defendant's use of force is excessive is a fact intensive inquiry. *See Hudson*, 503 U.S. at 7 (discussing factors for courts to consider). Lower courts' decisions demonstrate as much. *See, e.g.*, *Alspaugh v. McConnell*, 643 F.3d 162, 168–69 (6th Cir. 2011) (finding genuine issue of material fact as to whether prison officials applied force maliciously and sadistically to cause harm where parties disputed whether prisoner was resisting when two correctional officers beat him); *Griffin v. Hardrick*, 604 F.3d 949, 954–56 (6th Cir. 2010) (concluding, under the Due Process clause, that correctional officer's leg sweep that resulted in a pre-trial detainee fracturing her tibia was not excessive where pretrial detainee "was acting in a noncompliant manner" and "was clearly struggling against" correctional staff); *Goudlock v. Dana Blankenship*, No. 1:13-CV-1215, 2016 WL 3668008, at *6 (N.D. Ohio July 11, 2016), *aff'd sub nom. Goudlock v. Blankenship*, No. 16-3879, 2017 WL 7116970 (6th Cir. Sept. 12, 2017) (citation and quotations omitted) (collecting cases) ("Even assuming that defendants used some force against plaintiff after he was handcuffed, plaintiff has produced no evidence of a discernible injury. In the absence of any evidence of a discernible injury, plaintiff cannot show that defendants' use of force was more than *de minimis*, and no reasonable jury could conclude based upon the undisputed facts that the pain and suffering inflicted by defendants was sufficiently serious to offend contemporary standards of decency."). The Undersigned has therefore carefully reviewed

the factual record, including the parties' affidavits and deposition testimony, Plaintiff's medical records, video and photographic evidence, and the contemporaneous reports of correctional staff.

Here, Plaintiff alleges that Defendants violated his right to be free from excessive force on five separate occasions.[3]  Because excessive force is a fact intensive inquiry, the Undersigned addresses each of them separately.[4]

### 1. December 31, 2017

On December 31, 2017, Plaintiff alleges that Defendants Patterson and Martin assaulted him while he was changing in his cell after showering. (Doc. 8-1 at 1).  Plaintiff was on lockdown at that time and was permitted one hour of recreation, during which he went to shower. (Doc. 39-3, ¶¶ 4–6).  A video of Plaintiff's cell block shows that Plaintiff returned to the cell block and opened what appears to be a janitorial closet. (*See* Doc. 47, File Name DVR 4_06_20171231_181547, 20:59 (hereinafter, "December 31 Video")).  Plaintiff then proceeded to pour water onto the cell block floor, creating a standing pool of water in the common area. (*Id.*, 21:00–21:34).  For the next 30 to 40 seconds, he collected shredded paper from his cell and threw it in that standing pool of water. (*Id.*, 21:35–22:15).

As correctional staff approached the cell block, Plaintiff attempted to hold the door to the common area closed. (*Id.*, 22:16–22:37).  After correctional staff entered the common area,

---

[3] Plaintiff's Amended Complaint alleges excessive force based on these five specific alleged incidents of excessive force. (*See generally* Docs. 8, 8-1, 18).  But in his Motion for Summary Judgment (Doc. 43) and related briefing (Doc. 61), Plaintiff attempts to raise additional claims of excessive force based on other physical altercations with Defendants that were not included in the Amended Complaint.  The law does not permit him to do so. *See Heru*, 2019 WL 4413041, at *2.  The Undersigned, therefore, addresses only those claims that were pled in the Amended Complaint.

[4] As Defendants note, "[i]n his original complaint, Mr. Brevaldo alleges that two incidents occurred on January 14, 2018 and another on January 15, 2018," but "the two incidents described in Plaintiff's original complaint as occurring on January 14 actually occurred on January 15, 2018, and the incident he alleges occurred on January 15 actually occurred on January 16, 2018." (Doc. 39 at 8 n.4).  This resulted in some confusion at Plaintiff's deposition. (*See generally* Doc. 41).  The parties' respective Motions for Summary Judgment and related briefs, nonetheless, use the dates identified by Defendants, and the Undersigned has done the same.

Plaintiff returned to his cell. (*Id.*, 22:38–23:08). Correctional staff worked to clean up the common area, with Plaintiff occasionally throwing paper out of his cell through the open tray into the pool of standing water. (*Id.*, 23:09–40:29).

Defendants Patterson and Martin then approached Plaintiff's cell and, after a brief conversation, attempted to open it. (*Id.*, 40:30–40:57). Based on the video footage, Plaintiff appears to attempt to hold the door shut, resulting in a struggle between the three men. (*Id.*, 40:58–41:23). Defendants Patterson and Martin overpowered Plaintiff, opened the door, and entered the cell. (*Id.*, 41:24–41:26).

Plaintiff alleges that what happened next inside the cell amounted to excessive force. In support of his claim, he relies on the narrative reports of correctional staff, including Defendants Patterson and Martin. (*See* Doc. 43 at 9–11 (citing Doc. 43-6)). But these narrative reports contradict, rather than corroborate, Plaintiff's claim of excessive force. (*See generally* Doc. 43-6). Consistent with their affidavits, (Docs. 39-3, 39-4), Defendants Patterson and Martin reported that they used force to restrain Plaintiff, who had disobeyed direct verbal commands, physically resisted being restrained, attempted to bite Deputy Martin, and threatened to kill them, (Doc. 43-6 at 3–4, 6–7).

Although Plaintiff does note cite it in his brief, the only evidence in the record that could support his claim of excessive force against Defendants Patterson and Martin is his deposition testimony. He testified that he did not resist Defendants Patterson and Martin trying to restrain him, (Doc. 41, 16:5–21; *id.*, 18:20–22), but they nonetheless struck him in the head with closed fists, (*id.*, 10:1–2). As a result of that blow, Plaintiff reported "having a head injury and being nauseous and puking and throwing up." (*Id.*, 20:17–21:30).

On the record before the Court, Plaintiff cannot satisfy the objective component of an Eighth Amendment excessive force claim. Here, other than his vague, self-serving deposition testimony, the record does not support a finding that the force used was "repugnant to the conscious of mankind," *Wilkins*, 559 U.S. at 38 (citation and quotations omitted). There is no evidence that Plaintiff suffered a discernible injury as a result of Defendants Patterson's and Martin's use of force. After the alleged assault occurred, the December 31 Video shows Plaintiff in handcuffs walking out of his cell unaided with correctional staff controlling his arms. (December 31 Video, 56:34–56:46). Further, he appears uninjured in the video, (*id.*), which photos taken after the alleged assault corroborate, showing Plaintiff red in the face and ears and with a small potential contusion on his upper left forehead, (Doc. 47, File Name DSCF4138–DSCF4141 (collectively, the "December 31 Pictures")). Despite being a frequent user of the Jail's medical services, his medical records show that he did not seek treatment after the December 31 incident. (*See* Doc. 39-13 at 18 (reflecting medical treatment on December 19, 2017 and January 5, 2018)). And when Plaintiff did request medical treatment five days after the December 31 incident, he complained about a small, red bump on his neck, not a head injury, nausea, or vomiting from the alleged assault. (*See id.*).

"When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007). Because the record blatantly contradicts Plaintiff's assertion that he was subject to more than *de minimis* force, Defendants Patterson and Martin are entitled to summary judgment here. *See Hernandez v. Simmons*, No. 3:15-CV-00954, 2018 WL 4566823, at *12–13 (M.D. Tenn. Sept. 21, 2018), *appeal dismissed*, No. 18-6293, 2019 WL 2446988 (6th Cir. Feb. 7, 2019)

("Hernandez does not offer any medical records documenting his injuries or any treatment; nor is there any evidence of his injuries other than his own descriptions. The only other evidence that speaks to the pain Hernandez suffered, therefore, is the video, which unmistakably contradicts Hernandez's claims of injury … Because he has failed to offer any evidence to substantiate his claimed injuries, there are no triable issues of fact regarding the objective component of Hernandez's Eighth Amendment claim."); *Goudlock*, 2016 WL 3668008, at *6 (citation and quotations omitted) (collecting cases) ("Even assuming that defendants used some force against plaintiff after he was handcuffed, plaintiff has produced no evidence of a discernible injury. In the absence of any evidence of a discernible injury, plaintiff cannot show that defendants' use of force was more than *de minimis*, and no reasonable jury could conclude based upon the undisputed facts that the pain and suffering inflicted by defendants was sufficiently serious to offend contemporary standards of decency."); *Rogers v. Shostak*, No. 1:14CV213, 2015 WL 3604057, at *9 (S.D. Ohio June 5, 2015) ("Thus, accepting as true plaintiff's sworn deposition testimony that defendant used force against him on September 11, 2013, by punching him hard in the chest and pushing him back into his bed, plaintiff has nonetheless failed to produce sufficient evidence to establish his Eighth Amendment claim. The evidence shows that defendant's actions constituted a *de minimis* use of force which caused plaintiff to suffer no discernible injury requiring medical treatment of any kind. Accordingly, there is no genuine issue of material fact and defendant is entitled to summary judgment on plaintiff's Eighth Amendment claim as a matter of law."); *Batey v. Cty. of Allegan*, No. 1:00-CV-450, 2002 WL 34729343, at *8 (W.D. Mich. Mar. 14, 2002) (concluding that "[a] *de minimis* injury … suggests that any use of force by defendants was *de minimis*" and granting defendants' motion for summary judgment where plaintiff "provided nothing but his own word that he was beaten" and "offered no medical evidence to support his allegation"); *accord Wilkins*,

559 U.S. at 38 (citation and quotations omitted) ("An inmate who complains of a push or shove that causes no discernible injury almost certainly fails to state a valid excessive force claim.").

### 2.    *January 13, 2018*

Plaintiff's excessive force claim regarding the events of January 13, 2018, is different.  On that day, Plaintiff was still on lockdown because of his actions on December 31, 2017.  (Doc. 41, 26:23–27:4).  During his hour of recreation, Plaintiff got into an altercation with Defendants Martin, Smith, and Hanning about Plaintiff's ability to communicate with his family and his desire to speak with Defendant Suciu.  (*Id.*, 26:2–14).  Defendant Smith instructed Plaintiff to return to his cell, (Doc. 39-3, ¶¶ 42–45), but he refused, saying he "wasn't going anywhere until they left the dorm behind the gate where [he] could safely walk into [his] cell," (Doc. 41, 27:21–24).

At some point, Plaintiff climbed under the table in the cell block's common area in an attempt to avoid being returned to his cell.  The parties dispute what happened next.  Defendants maintain that Plaintiff physically resisted their attempts to return him to his cell and, once in his cell, continued to resist their efforts to subdue him, requiring them to use, among other instances of force, three closed fist strikes to Plaintiff's head.  (*See* Doc. 39-3, ¶¶ 40–65; Doc. 39-5, ¶¶ 3–17; Doc. 39-6, ¶¶ 3–32).  Plaintiff, however, contends that they "rushed" him into his cell where Defendants Martin and Smith assaulted him while Defendant Hanning watched. (Doc. 41, 26:16–22).  According to Plaintiff, Defendants kicked him in his temple and ribs and punched him in the eye so hard that it "split the skin."  (*Id.*, 35:6–11).

Although the amount of force used is disputed, at the very least, Plaintiff was struck in the head multiple times.  Medical records confirm that he sought treatment after the incident, and medical staff noted three knots on his right forehead with swelling and bruising.  (Doc. 39-13 at 15).

There is a genuine issue of material fact as to whether Defendants applied force "in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Wilkins*, 559 U.S. at 37 (citation and quotations omitted). In Plaintiff's version of events, he was not resisting Defendants Martin and Smith when they "assaulted" him in his cell. (Doc. 41, 26:16–22). A rational trier of fact could conclude that kicking and punching an inmate who was not resisting or otherwise interfering with prison discipline was done maliciously and sadistically to cause harm. *See Alspaugh*, 643 F.3d at 168–69 (finding genuine issue of material fact as to whether prison officials applied force maliciously and sadistically to cause harm where parties disputed whether prisoner was resisting when two correctional officers beat him). And, despite Defendants' argument to the contrary, (*see* Doc. 39 at 18–19), even if Plaintiff's injuries were not serious, that does not change this conclusion because the Supreme Court has told us so. *See Wilkins*, 559 U.S. at 38; *Hudson*, 503 U.S. at 9.

On the other hand, a rational trier of fact believing Defendants' version of events, could conclude that Plaintiff was resisting Defendants Martin's and Smith's orders and that the force used to restrain Plaintiff was applied to restore prison discipline and, therefore, not excessive under the circumstances. *See Griffin*, 604 F.3d at 954–56 (concluding, under the Due Process clause, that correctional officer's leg sweep that resulted in a pre-trial detainee fracturing her tibia was not excessive where pretrial detainee "was acting in a noncompliant manner" and "was clearly struggling against" correctional staff); *see also Hudson*, 503 U.S. at 7 (citation and quotations omitted) (instructing courts to consider a number of factors, including: "the need for application of force," "the relationship between that need and the amount of force used," and "the threat reasonably perceived by the responsible officials"). A jury, and not the Undersigned, must resolve this factual dispute.

Finally, Plaintiff's Eighth Amendment claim against Defendant Hanning fails as a matter of law. Plaintiff admits that Defendant Hanning did not use physical force against him. (*See* Doc. 31, 26:22 ("Hanning stood there and watched.")). And Plaintiff cites no evidence and makes no argument to support a failure to intervene claim against Defendant Hanning. Defendant Hanning cannot be liable for the actions of other individuals. *See Heyerman*, 680 F.3d at 647 (citations omitted) ("Persons sued in their individual capacities under § 1983 can be held liable based only on their own unconstitutional behavior."). He is, therefore, entitled to summary judgment.

### 3. January 15, 2018 (Booking Cell Incident)

Several days later, Plaintiff had another physical altercation with correctional staff. On that day around 2:00 PM, Plaintiff was in a booking cell with fellow inmate Donovan Harris. (Doc. 39-8 at 2). Plaintiff was "[b]eing loud and obnoxious, talking through the slot." (Doc. 41, 40:21–24). Defendant Smith attempted to open the door to the booking cell and "to place a mat into" the cell for Mr. Harris. (Doc. 39-8 at 2). Plaintiff then approached Defendant Smith in an aggressive manner. (*Id.*). A struggle then ensued between Defendant Smith and other correctional staff and Plaintiff. Plaintiff would "not let[] them come in the cell" and would not "get[] out of the way" to prevent the cell door from opening. (Doc. 41, 40:2–10). He acknowledged that correctional staff "could have possibly got hurt trying to come in the cell" because of his actions and that "[he] could have got hurt for them trying." (*Id.*, 40:11–15). In short, Plaintiff admits that he resisted Defendants' efforts to maintain institutional discipline and that Defendants were compelled to use force as a result.

Given Plaintiff's admitted resistance, the Undersigned concludes that Defendants' use of force was not excessive under the circumstances. Here, the record shows that Defendants needed to use force to subdue Plaintiff because he had just approached Defendant Smith in an aggressive

fashion and, as Plaintiff admits, he resisted Defendants' attempts to open his cell door. Further, Plaintiff suffered little, if any, injury as a result of Defendants' alleged actions. He did not seek medical treatment the day of the altercation, and when he was seen the following morning, he complained of pain in his left wrist and stated he thought he had a blood clot. (Doc. 39-13 at 14). Indeed, the record confirms that he had "good" range of motion and no swelling, redness, or bruising. (*Id.*). Under these circumstances, the Undersigned finds that no rational trier of fact could conclude that Plaintiff was subjected to excessive force. Defendants Hartman, Smith, and Lang are, therefore, entitled to summary judgment as to this claim of excessive force.[5]

### 4.    January 15, 2018 (Phone Call Incident)

Later that day, Plaintiff was placed on suicide watch and brought down to the booking area. (Doc. 41, 43:3–11). Because Plaintiff was on lockdown, he was not permitted to use the phone without permission. (*Id.*, 43:20–23). That evening, he requested to use the phone, and correctional staff denied his request. (*Id.*, 44:8–14). Despite that denial, the video shows Plaintiff proceeding to sit down on a bench and use the phone in the booking area. (*See* Doc. 47, File Name DVR 1_04_20180115_180011, 1:53–58 (hereinafter, "January 15 Video")).

Shortly thereafter, correctional staff noticed Plaintiff using the phone and appeared to instruct him to get off the phone. (*Id.*, 1:59–2:03). Sergeant Winters emerged from his office and approached Plaintiff. (*Id.*, 2:04–07). He then attempted to take the phone from Plaintiff, who refused to hang up. (*Id.*, 2:08–13).

---

[5] In his Complaint, Plaintiff identified Defendants Hartman and Lang as being liable for excessive force related to this incident. (Doc. 8-1 at 3). Additionally, in his Motion for Summary Judgment, he identified Defendant Smith as being involved in this incident. (Doc. 43 at 16). Plaintiff failed to identify any additional Defendants against whom he intended to bring this claim, but they are entitled to summary judgment for the same reason.

After Plaintiff resisted Sergeant Winters' attempts to hang up, Sergeant Winters pulled him off the bench onto the floor. (*Id.*, 2:14–16). At that point, four additional correctional staff members responded and assisted Sergeant Winters in restraining Plaintiff on the floor. (*Id.*, 2:17–3:32). While they restrained Plaintiff, one staff member removed a restraint chair from a cell. (*Id.*, 3:33–57). They then worked to restrain Plaintiff in that chair. (*Id.*, 3:57–6:21).

What is not clear from the available video footage[6] is the type and amount of force Defendants used in subduing Plaintiff and whether Plaintiff was resisting or otherwise interfering with prison discipline at the time that force was applied.[7] Plaintiff asserts that Defendant Winters tackled him to the ground "and punched [him] in the face multiple times until [he] blacked out." (Doc. 41, 42:14–24). Specifically, he alleges Defendant Winters punched him "[a] good three to six times" and that "someone kicked him" as well. (*Id.*, 45:19–23). Further, he alleges that, after he blacked out, he "was placed in a restraint chair and pushed into a cell where [he] was shocked with a stun gun multiple times." (*Id.*, 42:14–24).

In contrast, Defendants assert that Plaintiff refused their commands to hang up the phone and continued to resist their commands when he was pulled to the ground by Defendant Winters. (Doc. 39-9, ¶¶ 9–15). Because Plaintiff continued to resist, Defendant Winters "gave him a tactical knee strike in the midsection of his right side" and was then "able to gain control … and place [Plaintiff] in handcuffs." (*Id.*, ¶¶ 16–17). Plaintiff, nonetheless, continued to resist being placed in the restraint chair and repeatedly threatened Defendant Winters. (*Id.*, ¶¶ 18–19). After being placed in the restraint chair, Defendants moved Plaintiff to a cell, where he subsequently "got[]

---

[6] Defendants also submitted a video of the incident taken from a different angle, but it is similarly inconclusive. (*See* Doc. 47, File Name DVR 1_06_20180115_180006).

[7] The January 15 Video does appear to show Plaintiff agitated, yelling, and/or resisting as correctional staff try to place him in the restraint chair. (*See, e.g.*, January 15 Video, 4:50–56). But those instances do not appear to involve the use of force that is the basis of Plaintiff's excessive force claim.

out of the restraint chair." (*Id.*, ¶¶ 20–21). Defendant Winters and other correctional staff entered the cell and instructed Plaintiff to return to the restraint chair. (*Id.*, ¶ 24). Plaintiff refused and resisted their efforts to return him to the restraint chair, (*id.*, ¶¶ 25–27); as a result, Officer Catherine Morris, a non-defendant, used her taser to conduct "a drive stun" to Plaintiff's left arm, (Doc. 39-10, ¶¶ 18–19).

The record is inconclusive as to what, if any, injury Plaintiff suffered as a result of this incident. He sought medical treatment the following morning, complaining of pain to his left wrist. (Doc. 39-13 at 14). From the available video, it is not possible to determine what, if any, injury Plaintiff suffered, and there do not appear to be any photographs of Plaintiff after the incident.

Based on the competing factual narratives, there is a genuine issue of material fact as to whether Defendant Winters' use of force was excessive under the circumstances. *See Alspaugh*, 643 F.3d at 168–69 (finding genuine issue of material fact as to whether prison officials applied force maliciously and sadistically to cause harm where parties disputed whether prisoner was resisting when two correctional officers beat him). And, again, even if Plaintiff was not seriously injured, that alone does not foreclose his excessive force claim. *See Wilkins*, 559 U.S. at 38; *Hudson*, 503 U.S. at 9.

However, to the extent Plaintiff seeks to hold Defendant Winters liable for Officer Morris' use of a taser, he cannot do so. Defendants have presented undisputed evidence that Officer Morris, not Defendant Winters, used a taser against Plaintiff on the evening of January 15, 2018, (Doc. 39-9, ¶ 28; Doc. 39-10, ¶¶ 18–19), and Plaintiff admits as much, (*see* Doc. 43 at 17–18 (quoting Officer Morris' narrative report regarding her use of a taser on Plaintiff)). Officer Morris is not a defendant in this action, and Defendant Winters cannot be held liable for her actions, *see Heyerman*, 680 F.3d at 647 (citations omitted) ("Persons sued in their individual capacities under

§ 1983 can be held liable based only on their own unconstitutional behavior."). Defendant Winters is, therefore, entitled to summary judgment as to any claim of excessive force related to Officer Morris' use of a taser on January 15, 2018.

### 5. *January 16, 2018*

Plaintiff's last excessive force claim is based on the events of the following day. At that time, Plaintiff was housed in a cell in the booking area where he banged on the door and repeatedly called for medical attention. (Doc. 47, File Name DVR 1_07_20180116_133148, 0:01–3:48 (hereinafter, "January 16 Video")). After several minutes of this, correctional staff gathered around Plaintiff's cell with a restraint chair. (*Id.*, 3:49–4:31). A number of Defendants directed him to move away from the cell door so that they could enter the cell. (*Id.*, 4:32–4:57). A struggle between Plaintiff and those Defendants ensued as they attempted to open the cell door. (*Id.*, 4:58–5:16). The January 16 Video does not show what happened next inside the cell. The video's audio records what sounds like a physical altercation inside the cell, including the use of a taser. (*Id.*, 5:17–58); *id.*, 5:38–40 (audio of what sounds like the use of a taser and Plaintiff's reaction to the same)).

The parties dispute what occurred inside the cell. Plaintiff testified that Defendants Fuller, Lang, and Hartman burst into the cell and assaulted him. (Doc. 41, 37:13–24; *id.*, 38:17–20). After punching and kicking him, someone told Plaintiff "to cuff up," and he proceeded to "put [his] hand behind [his] back." (*Id.*, 38:21–23). Despite complying with Defendants' command, Defendant Lang said "shoot him" at which time Defendant Fuller "shot [him] in the back with the Taser" and laughed at him. (*Id.*, 38:23–39:2). Defendant Fuller then deployed the Taser again and told Plaintiff to "enjoy that." (*Id.*, 39:2–4).

Defendants' account, not surprisingly, is radically different. According to them, Plaintiff resisted their commands to let go of the door and physically confronted them when they entered the cell. (Doc. 39-12, ¶¶ 6–9). After Deputy Fuller tackled Plaintiff to the floor, Plaintiff resisted their attempts to restrain him, kicking out at Defendants and attempting to hold on to Defendant Hartman's ankle. (Doc. 39-7, ¶¶ 16–19). Defendant Hartman kicked Plaintiff once in the chest to get him to release his ankle, and Defendant Fuller deployed his taser as Plaintiff pulled at Deputy Hartman and continued to kick out at Defendants. (*Id.*, ¶¶ 20–21; Doc. 39-12, ¶¶ 15–16). Plaintiff did not comply with Defendants' commands until Defendant Fuller used his taser. (Doc. 39-12, ¶¶ 17).

After the incident, Plaintiff received medical treatment from three E.M.T.s who removed the taser barbs and evaluated Plaintiff. (*Id.*, ¶ 19). Photos taken after the incident show Plaintiff with two open wounds on his back as a result of him being tased, a laceration across the back of his head, and a bloodied ear. (Doc. 47, File Name DSCF4230–DSCF4232).

Construing the evidence in the light most favorable to Plaintiff, there is a genuine issue of material fact as to whether Defendants Fuller's, Lang's and Hartman's use of force was excessive under the circumstances. *See Alspaugh*, 643 F.3d at 168–69 (finding genuine issue of material fact as to whether prison officials applied force maliciously and sadistically to cause harm where parties disputed whether prisoner was resisting when two correctional officers beat him); *Colvin v. Heyns*, No. 1:15-CV-70, 2018 WL 1069449, at *7 (W.D. Mich. Feb. 26, 2018), *appeal dismissed*, No. 18-1290, 2019 WL 1224689 (6th Cir. Jan. 4, 2019) (holding that there was a genuine issue of material fact as to whether the defendants applied force maliciously and sadistically to cause harm where parties disputed whether prisoner was resisting when the defendants tased him). And the Undersigned again rejects Defendants' argument that because

Plaintiff's injuries were not "serious," he has no claim  *See Wilkins*, 559 U.S. at 38; *Hudson*, 503 U.S. at 9.

Finally, Defendants' Motion to Strike (Doc. 59) is **DENIED as moot**.  The Undersigned was able to resolve the parties' Motions for Summary Judgment without referring to the Interrogatory Responses (Doc. 43-13) submitted by Plaintiff that are the subject of Defendants' Motion.

### F.      Qualified Immunity

Defendants maintain that they are entitled to qualified immunity because, "[a]fter viewing all the evidence presented herein, there is no evidence that a constitutional violation occurred." (Doc. 39 at 21).  But as the Undersigned has explained above, there is a genuine issue of material fact as to whether at least some of the individual Defendants' actions constituted excessive force in violation of the Eighth Amendment.  Until a jury resolves those factual disputes, those Defendants are not entitled to qualified immunity.

### G.      Miscellaneous Claims

In his Amended Complaint and Motion for Summary Judgment, Plaintiff states his intention to sue under various provisions of the Ohio Revised Code.  (*See* Doc. 18, ¶¶ 4(a)-(c) (citing O.R.C. §§ 2921.03, 2921.44, 5120-9-01); Doc. 43 (citing O.R.C. § 2921.03)).  But these provisions appear to be either state criminal statutes (O.R.C. §§ 2921.03, 2921.44) or statutes without a private right of action (O.R.C. § 5120-9-01).  Moreover, Plaintiff makes no argument and cites no evidence in support of any potential claims under these statutes.  Defendants are entitled to summary judgment on these claims as a result.

**H.      Service**

In their Motion for Summary Judgment, Defendants argue that Defendants Martin, Smith, Hanning, Hartman, Fuller, Patterson, Lang, and Winters should be dismissed from this lawsuit based on Plaintiff's alleged failure to serve them with the original or amended complaints.  (Doc. 39 at 13).  The Federal Rules provide that, "[i]f a defendant is not served within 90 days after the complaint is filed, the court—on motion or on its own after notice to the plaintiff—must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  Fed. R. Civ. P. 4(m).  If, however, "the plaintiff shows good cause for the failure, the court must extend the time for service for an appropriate period."  *Id.*

On November 6, 2018, the Undersigned issued a Report and Recommendation recommending granting Defendants' Motion to Dismiss, but also recommending granting Plaintiff 30 days in which to file an amended complaint.  (*See* Doc. 17).  Shortly after the issuance of the Report and Recommendation, and before the District Court Judge assigned to the case adopted it, Plaintiff filed an Amended Complaint purporting to add Defendants Martin, Smith, Hanning, Hartman, Fuller, Patterson, Lang, and Winters as defendants in this action.  (*See* Doc. 18).  As reflected in a November 16, 2018, staff note on the docket, Plaintiff submitted service documents to the Clerk's Office to be served on those proposed new defendants.  Due to a clerical error, and through no fault of Plaintiff, when the District Court Judge assigned to the case adopted the Report and Recommendation (*see* Doc. 20), the Clerk's Office did not serve the Amended Complaint on those new defendants.

Because Plaintiff was not responsible for the failure to serve Defendants in this action, and because Defendants are represented by the same counsel, the Undersigned recommends that, if the District Court Judge permits any claims to go forward against Defendants, that the Clerk's Office

be instructed to effect service of process on the relevant Defendants. *See* Fed. R. Civ. P. 4(m) (providing that, if good cause is shown for failure to effect service of process, "the court must extend the time for service for an appropriate period").

## IV.    CONCLUSION

For the foregoing reasons, the undersigned **RECOMMENDS** that Defendants' Motion for Summary Judgment (Doc. 39) be **GRANTED in part and DENIED in part** and that Plaintiff's Motion for Summary Judgment (Doc. 43) be **DENIED**. Specifically, the Undersigned **RECOMMENDS** that Plaintiff be permitted to proceed with his excessive force claims against:

- Defendants Martin and Smith for their alleged actions on January 13, 2018;

- Defendant Winters for his alleged actions on January 15, 2018; and

- Defendants Fuller, Lang, and Hartman for their alleged actions on January 16, 2018

The Undersigned **RECOMMENDS** that summary judgment be entered in favor of Defendants on all remaining claims. Further, Defendants' Motion to Strike (Doc. 59) is **DENIED as moot**.

### Procedure on Objections

If any party objects to this Report and Recommendation, that party may, within fourteen (14) days of the date of this Report, file and serve on all parties written objections to those specific proposed findings or recommendations to which objection is made, together with supporting authority for the objection(s). A judge of this Court shall make a *de novo* determination of those portions of the report or specified proposed findings or recommendations to which objection is made. Upon proper objections, a judge of this Court may accept, reject, or modify, in whole or in part, the findings or recommendations made herein, may receive further evidence or may recommit this matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1). Failure to object to the Report and Recommendation will result in a waiver of the right to have the district judge review

the Report and Recommendation *de novo*, and also operates as a waiver of the right to appeal the decision of the District Court adopting the Report and Recommendation. *See Thomas v. Arn*, 474 U.S. 140, 152–53 (1985).

IT IS SO ORDERED.

Date:   January 17, 2020                              /s/ Kimberly A. Jolson
                                                      KIMBERLY A. JOLSON
                                                      UNITED STATES MAGISTRATE JUDGE